STATE OF CONNECTICUT *v.* HARRY TORRES
(13076)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and HULL, Js.

Argued December 2, 1987—decision released February 23, 1988

*Kent Drager,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom, on the brief, was *James Thomas,* assistant state's attorney, for the appellee (state).

PETERS, C. J. The dispositive issue on appeal is whether a child[1] who was transferred, pursuant to General Statutes (Rev. to 1983) § 46b-127,[2] from the docket of Juvenile Matters to the regular criminal docket of the Superior Court on a charge of murder must be

---

[1] General Statutes § 46b-120 defines "child" as "any person under sixteen years of age."

[2] General Statutes (Rev. to 1983) § 46b-127, as amended by Public Acts 1983, No. 83-402, § 2, provides: "(Formerly Sec. 51-308). CHILD CHARGED WITH MURDER OR FELONY TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. The court shall transfer to the regular criminal docket of the superior court from the docket for juvenile matters: (1) Any child referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive, provided any such murder was committed after such child attained the age of fourteen years; (2) any child referred for the violation of any provision of title 53a which is designated as a class A felony, if such violation was committed after such child attained the age of fourteen, provided such child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or (3) any child referred for the violation of any provision of title 53a which is designated as a class B felony, provided such violation was committed after such child attained the age of fourteen years, and further provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony. No such transfer shall be valid unless, prior thereto, the court has made written findings, after a hearing, that there is probable cause to believe that the child has committed the act for which he is charged. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

returned to Juvenile Matters if the state fails to show probable cause to sustain the murder charge. The defendant, Harry Torres, was originally charged with the crime of murder in violation of General Statutes § 53a-54a.[3] When the trial court, *Corrigan, J.*, ruled that the state had failed to establish probable cause to proceed with this charge, the state filed a substitute information charging the defendant with manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a).[4] After the defendant unsuccessfully moved that his case be dismissed or transferred back to juvenile court, he pleaded nolo contendere to the substitute information and was sentenced to a term of twenty years imprisonment to be followed by three years probation. The defendant has appealed the propriety of the proceedings leading to his conviction of manslaughter on the regular criminal docket of the Superior

[3] General Statutes § 53a-54a provides: "MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[4] "[General Statutes] Sec. 53a-55a. MANSLAUGHTER IN THE FIRST DEGREE WITH A FIREARM: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information."

Court. We find error and remand for retransfer and further proceedings in Juvenile Matters.

The state recited the following factual basis for the defendant's plea of nolo contendere at the time it was accepted by the trial court. On November 23, 1983, the defendant became involved in a fight with the victim on Beaver Street in New Britain. The defendant broke away from the fight and shortly thereafter returned with a shotgun. During the ensuing struggle over the shotgun, it discharged a shot, which struck the victim in the chest. Six days later, the victim died of the shotgun wound.

Although the defendant was only fifteen years old at the time he allegedly committed this offense, the state sought to have him tried for murder. Upon his arrest by warrant on December 29, 1983, the defendant was brought to Superior Court, geographical area number 15, where an information had been filed charging him with murder in violation of § 53a-54a. The trial court, *L. Dorsey, J.*, ordered him transferred to Juvenile Matters in accordance with General Statutes § 46b-133.[5] Thereafter, a petition of alleged delinquency was filed pursuant to General Statutes § 46b-128[6] and the prosecutor for Juvenile Matters moved to have the defendant transferred to the

---

[5] General Statutes § 46b-133 (b) provides: "(Formerly Sec. 51-314). ARREST OF CHILD. RELEASE OR DETENTION OF ARRESTED CHILD. . . .

"(b) Whenever a child is brought before a judge of the superior court, such judge shall immediately have the case proceeded upon as a juvenile matter. Such judge may admit such child to bail or release him in the custody of his parent or parents, his guardian or some other suitable person to appear before the superior court when ordered. If detention becomes necessary or desirable, the same shall be in the manner prescribed by this chapter."

[6] General Statutes § 46b-128 provides in relevant part: "(Formerly Sec. 51-309). INVESTIGATION OF DELINQUENCY COMPLAINT. NONJUDICIAL DISPOSITION. PETITION OF DELINQUENCY. Whenever the superior court is in receipt of any written complaint filed by any person, any public or private agency or any federal, state, city or town department maintaining that a child's conduct constitutes delinquency within the meaning of section

regular criminal docket in accordance with § 46b-127. The defendant objected to the transfer on the ground that the transfer provisions were unconstitutional. The court, *Covello, J.*, overruled the objection and, on February 15, 1984, after holding the hearing mandated by § 46b-127, found probable cause to believe that the defendant had committed murder and ordered him transferred to the regular criminal docket.[7]

In subsequent proceedings in the regular criminal docket, the trial court, *Corrigan, J.*, held the probable cause hearing that is constitutionally required on a charge of murder[8] and concluded that the state had failed to establish probable cause that the defendant had intended to commit murder. The state thereafter, over the defendant's objection, filed a substitute information charging him with manslaughter with a firearm in violation of § 53a-55a (a). In response, the defendant moved for dismissal of the substitute information or for transfer of the case back to the docket of Juvenile Matters. The trial court, *E. O'Connell, J.*, denied the defendant's motion on the ground that the statutory transfer scheme did not specify failure to find probable cause as a ground for resumption of juvenile status. The defendant then entered a nolo contendere plea to the manslaughter charge.

46b-120, it shall make a preliminary investigation to determine whether the facts, if true, would be sufficient to be a juvenile matter and whether the interests of the public or the child require that further action be taken. If so, the court may authorize the filing of a verified petition of alleged delinquency . . . ."

[7] Shortly thereafter, the defendant filed an appeal challenging the propriety of his transfer but withdrew the appeal in light of our decision in *In re Juvenile Appeal (85–AB)*, 195 Conn. 303, 488 A.2d 778 (1985), holding that a juvenile transfer was not a final judgment for the purposes of appeal. Under Public Acts 1986, No. 86-185, such orders are now appealable. General Statutes §§ 46b-126, 46b-127.

[8] The state argued to the trial court that a subsequent hearing for probable cause was unnecessary since the defendant had already had a probable cause hearing prior to his transfer. On appeal, however, the state does not challenge the necessity or results of the second probable cause hearing. See *State* v. *Mitchell*, 200 Conn. 323, 329–30, 512 A.2d 140 (1986).

In his appeal from his manslaughter conviction, the defendant has raised three issues. He claims that: (1) the trial court erred in not dismissing the criminal charge against him or retransferring him to Juvenile Matters; (2) the juvenile transfer judge erred in originally transferring him from Juvenile Matters; and (3) the juvenile transfer judge erred in finding the juvenile transfer statutes constitutional. Our conclusion that the trial court erred in failing to transfer the defendant back to Juvenile Matters after it determined that there was no probable cause to support the charge of murder renders moot the defendant's additional claims, which we, accordingly, decline to reach.

I

Prior to turning to the merits of the defendant's first claim, we must determine whether the defendant properly reserved it for review on appeal from the judgment ensuing from his plea of nolo contendere. The defendant proposes three independent bases for review: (1) the defendant's appeal complies with the provision of General Statutes § 54-94a[9] that permits a conditional plea of nolo contendere to reserve issues raised by a motion to dismiss; (2) his claimed right to dismissal or retransfer involves a challenge to the trial court's subject matter jurisdiction and can therefore be raised at any time; or (3) this court should review his claim in the exercise

[9] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

of its inherent supervisory authority over the administration of justice. Because we agree with the first of these assertions of appellate jurisdiction, we need not consider the others.

Under § 54-94a, a defendant may enter a plea of nolo contendere conditional on the right to take an appeal either from a trial court's denial of a motion to suppress evidence based on an unreasonable search and seizure or from the denial of a motion to dismiss. *State* v. *Badgett,* 200 Conn. 412, 415, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 473, 93 L. Ed. 2d 373 (1986); *State* v. *Madera,* 198 Conn. 92, 98, 503 A.2d 136 (1985).[10] The state concedes that, in pleading nolo contendere, the defendant in this case relied upon § 54-94a.

The state argues nonetheless that the motion by which the defendant sought the return of his case to Juvenile Matters is not a motion to dismiss whose denial can be appealed under § 54-94a.[11] According to the

[10] In *State* v. *Madera,* 198 Conn. 92, 99, 503 A.2d 136 (1985), we confined the scope of General Statutes § 54-94a to its express language, holding that it did not encompass a motion to suppress a confession on the ground that it had been illegally obtained.

[11] The defendant filed the following pleading:

"MOTION RE: JURISDICTION

"The defendant, Harry Torres, respectfully represents that:

"1. On November 23, 1983, he was 15 years old, having been born on December 9, 1967.

"2. He is currently charged in this case with Manslaughter in the First Degree with a Firearm, Conn. Gen. Stat., Sec. 53a-55a (a), alleged to have occurred on or about November 23, 1983.

"3. The defendant, owing to his age, ought to be held to answer to such charge in the Juvenile Court for the Hartford/New Britain Judicial District, pursuant to the jurisdictional provisions of Conn. Gen. Stats., Secs. 46b-120 (Juvenile Matters). *et. seq.*

"Wherefore, the defendant moves this Court to dismiss the instant case, or make whatever other Order the Court deems appropriate.

"The Defendant
"By /s/ Richard F. Kelly
His Attorney

"Dated: May 10, 1984"

state's reading of the motion, it is either a motion to transfer whose denial is not appealable under § 54-94a or a motion to dismiss on jurisdictional grounds whose merits are appealable without regard to § 54-94a. On the latter construction of the defendant's motion, the state urges us to hold that a denial of retransfer does not implicate subject matter jurisdiction. According to the state, therefore, no matter how the defendant's motion is construed, the defendant is precluded from appellate review of its denial by the trial court.

We decline to take as formalistic a view of the pleading in question as the state would have us espouse. Although not captioned a motion to dismiss, the defendant's motion requested the trial court to "dismiss the instant case, or make whatever other Order the Court deems appropriate" and set forth as a basis for such relief that the defendant should be held to answer to the charge of manslaughter in the Juvenile Court pursuant to General Statutes § 46b-120 et seq. The trial court, moreover, treated the defendant's motion as a motion to dismiss. We conclude that the defendant's motion qualified as a motion to dismiss for the purposes of appellate review under § 54-94a.

## II

Turning to the merits of the defendant's motion to dismiss or transfer, we must examine the relevant provisions of the statutes governing juvenile transfers. The parties are in accord that the crucial language for us to interpret is contained in the last two sentences of § 46b-127, which provide: "Upon the effectuation of the transfer [from the juvenile docket], [a] child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen."

In its memorandum of decision denying the defendant's motion to dismiss, the trial court relied on a literal reading of the authorization in § 46b-127 for resumption of juvenile status. The court held that a finding of lack of probable cause that the defendant had committed murder was not a dismissal, a nolle, or an acquittal. Accordingly, it concluded that the defendant's case should remain on the regular criminal docket and that the defendant's motion to dismiss the substitute information filed by the state should be denied.

On appeal, the parties have stated the determinative issue somewhat differently than at trial. Does § 46b-127 contemplate a defendant's return to juvenile status once a decision has been made that the defendant will not be further prosecuted on the *particular* charge underlying his transfer to the regular criminal docket or must resumption of juvenile status await final disposition in his or her favor of the case *as a whole*? The defendant urges us to conclude that a finding of no probable cause to support the charge of murder was the functional equivalent of a nolle or an acquittal on *that* charge, which entitled him to "resume his status as a juvenile." The state maintains, to the contrary, that once a valid transfer to the regular criminal docket has occurred, § 46b-127 anticipates resumption of juvenile status only on future, unrelated occasions in which the defendant is alleged to have engaged in conduct potentially subjecting him to criminal liability.

In approaching these alternate readings of § 46b-127, we must take into account the well established rule of statutory construction that statutes are to be construed in a manner that gives effect to the apparent intention of the legislature. *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986). To discern this intent, we consider the language of the statute as well as its legislative history. *Norwich* v. *Silverberg,* supra,

371; *State* v. *Kozlowski,* supra, 673–74. "Mindful of inherent statutory interrelationships, futhermore, we endeavor 'to read the statute as a whole and so as to reconcile all parts as far as possible.' *Grodis* v. *Burns,* 190 Conn. 39, 44, 459 A.2d 994 (1983)." *Norwich* v. *Silverberg,* supra. A penal statute must be construed strictly against the state and liberally in favor of the accused. *State* v. *Paradise,* 189 Conn. 346, 352, 456 A.2d 305 (1983).

Although the last sentence of § 46b-127, when read in isolation, is not free from ambiguity, when read in conjunction with the juvenile transfer scheme as a whole, §§ 46b-145,[12] 46b-126,[13] and 46b-127, the statutory language supports the construction that the defendant urges upon us. Taken together, these statutes reflect the legislature's intent to correlate the seriousness of an offense charged with the juvenile's susceptibility to transfer to the regular criminal docket. In the circumstances of this case, the statutes require a construc-

---

[12] "[General Statutes] Sec. 46b-145. (Formerly Sec. 51-326). CHILD NOT TO BE PROSECUTED. No child shall be prosecuted for an offense before the superior court, nor shall the adjudication of such court that a child is delinquent in any case be deemed a conviction of crime except as provided in sections 46b-126 and 46b-127."

[13] General Statutes (Rev. to 1983) § 46b-126, as amended by Public Acts 1983, No. 83-402, § 1, provides: "(Formerly Sec. 51-307). CHILD CHARGED WITH A CLASS A FELONY OR SERIOUS JUVENILE OFFENSE TRANSFERRED TO REGULAR CRIMINAL DOCKET, WHEN. (a) The court shall hold a transfer hearing to determine whether it is appropriate to transfer and may transfer from the docket for juvenile matters to the regular criminal docket of the superior court any child referred for the commission of a class A felony, or for any serious juvenile offense designated as a class B or C felony if such child has previously been adjudicated a delinquent for a serious juvenile offense, as defined in section 46b-120, provided such child has attained the age of fourteen at the time the alleged delinquent act was committed. If the child is or has been under the custody of the commissioner of children and youth services, the commissioner shall provide any relevant information concerning the amenability of the child to treatment for use at the transfer hearing. No such transfer shall be valid unless, prior thereto, the court has made written findings after a hearing, that there is probable cause to believe that (1) the child has committed the act for which he is charged;

tion of § 46b-127 that mandates the granting of the defendant's motion for dismissal and the retransfer of his case to the juvenile docket for further consideration of the defendant's case.

The juvenile transfer statutes establish a detailed plan for transferring a case to the regular criminal docket. Two statutes, §§ 46b-127 and 46b-126, are central to this plan. For present purposes, the more directly relevant statute is § 46b-127, which provides for mandatory transfer to the regular criminal docket of any juvenile, who was at least fourteen years old at the time of the offense charged, in two sets of circumstances. For a juvenile "referred for the commission of a murder under sections 53a-54a to 53a-54d, inclusive," transfer follows upon a judicial finding, after a hearing, that "there is probable cause to believe that the child has committed the act for which he is charged." For a juvenile "referred for the violation of any provision of title 53a which is designated as a class A felony" such a finding of probable cause mandates transfer only if "such

(2) the child is not amenable to treatment in any institution or state agency or other available facility designed for the care and treatment of children to which said court may effect placement of such child which is suitable for his care or treatment; and (3) the prior adjudications of the child, together with the serious and dangerous nature of the acts and the physical, mental and emotional history and condition of the child, are such that the child is a danger to society and requires more secure and longer term handling than the juvenile justice system is able to provide and the institutions to which said court may sentence a defendant sixteen years of age or over are more suitable for the care and treatment of such child. Upon the effectuation of the transfer, such child shall stand trial and be sentenced, if convicted, as if he were sixteen years of age. If the action is dismissed or nolled or if such child is found innocent of the charge for which he was transferred, the child shall resume his status as a juvenile until he attains the age of sixteen.

"(b) There shall be established or designated by the department of children and youth services a secure facility or facilities within the state devoted to the care and treatment of children, which children are under the jurisdiction of the superior court. A consideration for admission to such a facility shall be adjudication for a serious juvenile offense."

child has previously been adjudicated a delinquent at any age for a violation of any provision of title 53a, which at the time of such violation was designated a class A felony; or . . . for the violation of any provision of title 53a which is designated as a class B felony . . . provided such child has previously been adjudicated delinquent for two violations of any provision of title 53a, which at the time of such violations were designated a class A or B felony."

By contrast, § 46b-126 allows the court to transfer children "referred for the commission of a class A felony, or for any serious juvenile offense designated as a class B or C felony if such child has previously been adjudicated a delinquent for a serious juvenile offense, as defined in section 46b-120,[14] provided such child has attained the age of fourteen at the time the alleged delinquent act was committed." For this enlarged class of crimes, however, § 46b-126 permits a discretionary transfer only when a court, after a hearing, makes findings more extensive than those required by § 46b-127. Under § 46b-126, a court must find probable cause not only that the child has committed the crime charged but also that the child is unamenable to treatment in available juvenile care and treatment facilities and that the child has demonstrated his dangerousness to society.

In transferring the defendant's case to the regular criminal docket, the trial court, *Covello, J.,* acting pur-

[14] General Statutes § 46b-120 defines a "serious juvenile offense" as "the violation by a child, including attempt or conspiracy to violate sections 53-80a, 53-390 to 53-392, inclusive, 53a-54a to 53a-57, inclusive, 53a-59 to 53a-60c, inclusive, 53a-70 to 53a-71, inclusive, 53a-72b, 53a-86, 53a-92 to 53a-94, inclusive, 53a-95, 53a-101, 53a-111 to 53a-113, inclusive, subdivision (1) of subsection (a) of section 53a-122, subdivision (3) of subsection (a) of section 53a-123, 53a-134, 53a-135, 53a-166, 53a-167c, subsection (a) of section 53a-174, 53a-196a, 53a-211, or for having without just cause run away from any secure placement other than home while committed as a delinquent child to the commissioner of children and youth services for a serious juvenile offense."

suant to § 46b-127, found only that there was probable cause to believe that the defendant had committed "the act for which he [was] charged," the crime of murder. In light of this limited finding, we hold that § 46b-127 required a transfer of the defendant back to Juvenile Matters after it had been found that there was no probable cause to believe he had committed murder.

To conclude otherwise would eviscerate the statutory transfer plan established by the legislature. Permitting the state to substitute a charge of manslaughter under § 53a-55a (b), a class B felony, would allow it to bypass the statutory safeguards that the legislature has attached to regular prosecutions of juveniles for such a crime. Had the defendant originally been referred to the Superior Court for manslaughter, he could not have been transferred to the regular criminal docket without additional judicial findings under § 46b-127 with regard to his prior involvement in the juvenile justice system or under § 46b-126 with regard to his prior history, amenability to treatment, and dangerousness to society. We perceive no basis, and the state has provided none, for treating this defendant differently.

The inferences to be drawn from the duality of §§ 46b-127 and 46b-126 serve also to refute the state's alternate contention that because manslaughter is a lesser included offense of murder, a valid transfer of a juvenile on a charge of murder automatically subsumes continued regular criminal proceedings on a charge of manslaughter.[15] The state's argument over-

[15] In support of its argument, the state invokes cases from a number of other jurisdictions, e.g., *People* v. *Davenport,* 43 Colo. App. 41, 602 P.2d 871 (1979); *Lucas* v. *United States,* 522 A.2d 876 (D.C. App. 1987); *Montgomery* v. *United States,* 521 A.2d 1150 (D.C. App. 1987); *Johnson* v. *State,* 379 So. 2d 704 (Fla. App.), cert. denied, 388 So. 2d 1114 (Fla. 1980); *Worthy* v. *State,* 253 Ga. 661, 324 S.E.2d 431 (1985); *Gray* v. *State,* 6 Md. App. 677, 253 A.2d 395 (1969); *Dicus* v. *Second Judicial District,* 97 Nev. 273, 625 P.2d 1175 (1981); *Commonwealth* v. *Romeri,* 504 Pa. 124, 470 A.2d 498 (1983), cert. denied sub nom. *Romeri* v. *Pennsylvania,* 466 U.S. 942,

states our law of lesser included offenses. In *State* v. *Rodriguez,* 180 Conn. 382, 398–408, 429 A.2d 919 (1980), we reviewed the relationship between a charge of murder and a conviction of manslaughter. That relationship finds its basis in the statutory mandate of § 53a-45 (c).[16] Even when that statute is fully applicable, we noted that an instruction on a lesser degree of homicide than that charged would not always be appropriate. *State* v. *Rodriguez,* supra, 407–408. For present purposes, it suffices to recognize that the legislative mandate of § 53a-45 (c) must be read in conjunction with the mandate of §§ 46b-127 and 46b-126. In these latter sections, the legislature established, for juveniles, specific distinctions between lesser and more serious offenses and prescribed transfer criteria reflecting these distinctions. As a matter of statutory construction, specific statutory provisions are presumed to prevail over more general statutory provisions dealing with the same overall subject matter. *McKinley* v. *Musshorn,* 185 Conn. 616, 623–24, 441 A.2d 600 (1981); *Edmundson* v. *Rivera,* 169 Conn. 630, 635, 363 A.2d 1031 (1975). We conclude, therefore, that the legislature did not intend the transfer of a juvenile on a charge of mur-

104 S. Ct. 1922, 80 L. Ed. 2d 469 (1984). Other courts, however, have adopted a position akin to the defendant's. See, e.g., *State ex rel. Davis* v. *Criminal District Court,* 368 So. 2d 1092 (La. 1979); *Metcalf* v. *Commonwealth,* 338 Mass. 648, 156 N.E.2d 649 (1959); *People* v. *Murch,* 263 N.Y. 285, 189 N.E. 220 (1934). All the cases cited by the state, moreover, involved statutes that differ significantly from the statute at issue in the instant case and framed the issue that they addressed in terms of whether the trial court had jurisdiction over a juvenile defendant. In contrast, we have held that, under our statutory scheme, transfer from the docket of Juvenile Matters to the regular criminal docket does not implicate the Superior Court's subject matter jurisdiction. *State* v. *Kelley,* 206 Conn. 323, 331–32, 537 A.2d 483 (1989).

[16] "[General Statutes] Sec. 53a-45. MURDER: PENALTY; WAIVER OF JURY TRIAL; FINDING OF LESSER DEGREE. . . .

"(c) The court or jury before which any person indicted for murder or held to answer for murder after a hearing conducted in accordance with the provisions of section 54-46a is tried may find him guilty of homicide in a lesser degree than that charged."

der to encompass his subsequent prosecution on a charge of manslaughter when probable cause for the murder charge is found to have been lacking.[17]

Contrary to the state's assertion, our decision in *State* v. *Anonymous,* 173 Conn. 414, 419, 378 A.2d 528 (1977), does not compel a different result. In *State* v. *Anonymous,* supra, we held with regard to General Statutes § 17-60a, the precursor of § 46b-126,[18] that once a defendant was transferred from the jurisdiction of the Juvenile Court, he lost his juvenile status and the benefits that attended it. The defendant in that case, however, did not contest the Superior Court's authority over him; *State* v. *Anonymous,* supra, 416 n.1; consequently, it was unnecessary for us to consider the circumstances under which a defendant could regain his juvenile status.

Our holding comports with the policies underlying the juvenile justice system as a whole. Section 46b-145 provides that "[n]o child shall be prosecuted for an offense before the superior court, nor shall the adjudication of such court that a child is delinquent in any case be deemed a conviction of a crime except as provided in sections 46b-126 and 46b-127." The General Assembly thus has expressed a preference for shielding children from criminal liability except in clearly circumscribed situations. The additional protections afforded juveniles, which include separation of juvenile matters from other business of the Superior Court; General Statutes § 46b-122; confidential proceedings; General Statutes

---

[17] We need not address today the defendant's further claims about other scenarios that may develop after a juvenile defendant is transferred to the regular criminal docket on a murder charge. We will leave for consideration at another time questions about the validity of a subsequent conviction of manslaughter as a result of a full trial or a plea of guilty.

[18] General Statutes § 17-60a dealt with the transfer of juveniles charged with murder. In 1979, the legislature reclassified the transfer statutes and moved the authority to transfer juveniles charged with murder from General Statutes § 46b-126 to § 46b-127. Public Acts 1979, No. 79-581.

§ 46b-122; anonymity; General Statutes § 46b-124; and erasure of police and court records; General Statutes § 46b-146; demonstrate the legislature's intent that children accused of wrongdoing be accorded different treatment from adults. Our construction of § 46b-127 is consistent with this manifest concern.The trial court was thus in error when it denied the defendant's request to return his case to the docket for Juvenile Matters.

### III

We are mindful that the defendant has raised claims of error beyond those encompassed by his motion to dismiss or transfer. In our view, however, our disposition of his transfer motion renders further consideration of these claims unnecessary.

In light of our order that the defendant be transferred back to the docket for Juvenile Matters, we need not consider his second claim that the transfer from the docket for Juvenile Matters to the regular criminal docket was not valid. Even were we to agree that the transfer was invalid, we could grant the defendant no further relief. " 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisidiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' " *Arnold Bernhard & Co.* v. *Planning & Zoning Commission,* 194 Conn. 152, 158, 479 A.2d 801 (1984); *State* v. *Macri,* 189 Conn. 568, 569, 456 A.2d 1203 (1983).

It is likewise unnecessary for us to consider the merits of the defendant's constitutional challenge to § 46b-127. As a result of the relief granted, the defendant is no longer subject to criminal liability pursuant to § 46b-127. It is not clear, at this juncture, whether the state will seek to have the defendant transferred again to the regular criminal docket on a manslaugh-

ter charge under either § 46b-127 or § 46b-126; it is thus possible that further proceedings will not depend on either statute. In concluding that resolution of the constitutionality of § 46b-127 through the vehicle of this appeal is not appropriate, we "follow the recognized policy of self-restraint and the basic judicial duty to eschew unnecessary determinations of constitutional questions." *Negron* v. *Warden,* 180 Conn. 153, 166, 429 A.2d 841 (1980).

There is error, the judgment is set aside and the case is remanded to the trial court with direction to vacate the plea, transfer the defendant back to the docket for Juvenile Matters and dismiss the substitute information.

In this opinion the other justices concurred.