STATE OF CONNECTICUT *v.* JOSEPH G. KANE
(13836)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and SANTANIELLO, Js.

Argued December 12, 1990—decision released March 26, 1991

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, was *Mary M. Galvin,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Joseph Kane, was charged in a substitute information with the crimes of felony murder in violation of General Statutes § 53a-54c, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), larceny in the first degree in violation of General Statutes § 53a-122 (a) (2), and conspiracy to commit larceny in violation of General Statutes §§ 53a-122 (a) (2) and 53a-48 (a).[1] A jury convicted the defendant of all counts. The trial court subsequently sentenced him to a term of imprisonment of forty-seven years for the crime of felony murder and

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (B) was not armed with a deadly weapon, or any dangerous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

"[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

"[General Statutes] Sec. 53a-122. LARCENY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of larceny in the first degree when he com-

to concurrent terms of imprisonment of twenty years on each of the remaining counts of the information.

The charges contained in the substitute information arose out of the robbery of Valentine's Diamond Center in Milford by the defendant and Carlton Jolley[2] on March 31, 1988. During the course of the robbery, a proprietor of the Diamond Center, Michael Valentine, was shot and killed, and jewelry with a wholesale value of approximately $39,000 was stolen. The defendant did not seriously dispute the fact that he had been at the scene of the robbery and had assisted in removing items from the store. He argued, however, that Jolley had shot the victim and that he had not been aware that Jolley planned a robbery.

At trial, the defendant presented the affirmative defense of insanity, claiming that at the time the crime was committed he suffered from a mental disease or defect. See General Statutes § 53a-13.[3] He maintained that, due to a passive personality disorder and adolescent adjustment reaction, he had been in a disassociated state during the robbery and had assisted in the rob-

___

mits larceny as defined in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

"[General Statutes] Sec. 53a-48. CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] Carlton Jolley was not tried with the defendant.

[3] "[General Statutes] Sec. 53a-13. LACK OF CAPACITY DUE TO MENTAL DISEASE OR DEFECT AS AFFIRMATIVE DEFENSE. (a) In any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law.

"(b) It shall not be a defense under this section if such mental disease or defect was proximately caused by the voluntary ingestion, inhalation or injection of intoxicating liquor or any drug or substance, or any combination thereof, unless such drug was prescribed for the defendant by a

bery while in that state. He contends, therefore, that he should have been found not guilty by reason of insanity. Two witnesses testified in the defendant's defense, his mother and James Merikangas, a neurologist and psychiatrist. The defendant did not testify. In his appeal the defendant has launched a wide-ranging attack on the conduct of his trial and the procedure by which he was brought to trial.[4]

licensed practitioner, as defined in section 20-184a, and was used in accordance with the directions of such prescription.

"(c) As used in this section, the terms mental disease or defect do not include (1) an abnormality manifested only by repeated criminal or otherwise antisocial conduct or (2) pathological or compulsive gambling."

[4] The defendant on appeal raises the following issues: "1. Whether [General Statutes] § 54-46a (b) is unconstitutional to the extent that it bars motions to suppress statements on the grounds of involuntariness at a hearing in probable cause?

"2. Whether the trial court committed reversible error when it precluded defense counsel from cross-examining the officers at the probable cause hearing concerning the circumstances under which the defendant's statements were obtained, on the ground that such examination went to a motion to suppress statements, where counsel offered the questions as relevant to the credibility of the statements, and the weight the court should give them?

"3. Whether the trial court erred in precluding the defense from rehabilitating the defense psychiatrist regarding his reliance on information from newspaper articles, where that reliance was attacked on cross-examination, and erred in precluding the defense from cross-examining the prosecution's psychiatrist as to bias and facts going to credibility of his opinion?

"4. Whether the trial court erred in concluding the defendant's custodial statements were voluntary?

"5. Whether the trial court erred in admitting the defendant's statements as admissions, rather than rebuttal or impeachment evidence, where the prosecution had deliberately chosen not to offer the statements in [its] case-in-chief?

"6. Whether the trial court erred in failing to enforce the mandatory provisions of Practice Book § 760 that a defendant's statements during a court-ordered psychiatric examination are not admissible on the issue of guilt, and erred in instructing the jury that the defendant's statements to the prosecution psychiatrist could be used as evidence of guilt?

"7. Whether the defendant was deprived of a fair trial by the prosecutor's pervasive misconduct during trial and in closing argument?

The defendant's principal claim is that General Statutes § 54-46a[5] is unconstitutional and deprived him of due process of law because the statute precluded a motion to suppress at his probable cause hearing and consequently deprived him of the opportunity to suppress his allegedly involuntary statements to the police at that stage of the proceedings. He contends, there-

"8. Whether the trial court's instruction that in order to rely on any inference, the jury must find both the basic fact and the inferred fact proven beyond a reasonable doubt, misled the jury as to the burden of proof on [the] inference the defendant sought to rely upon in support of his affirmative defense of mental disease or defect?

"9a. Whether the trial court's instructions on the defense of mental disease or defect were inadequate to guide the jury to a proper verdict because the court failed to define the terms 'mental disease or defect,' 'proximate cause,' and 'wrongfulness'?

"9b. Whether the trial court's instructions on the defense of mental disease or defect were inadequate to guide the jury to a proper verdict because the court failed to explain the scope of [General Statutes] § 53a-13 (b) and its application to the present case?"

[5] "[General Statutes] Sec. 54-46a. PROBABLE CAUSE HEARING FOR PERSONS CHARGED WITH CRIMES PUNISHABLE BY DEATH OR LIFE IMPRISONMENT. (a) No person charged by the state who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it. The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in superior court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce

fore, that he is entitled to a new probable cause hearing at which his motion to suppress must be heard, and a new trial. We disagree.

"It is well settled that a party who challenges a statute on constitutional grounds has no easy burden, for every intendment will be made in favor of constitutionality, and invalidity must be established beyond a reasonable doubt. *Lublin* v. *Brown,* 168 Conn. 212, 219, 362 A.2d 769 [1975]; *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 [1972], appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 [1973]; *Adams* v. *Rubinow,* 157 Conn. 150, 152–53, 251 A.2d 49 [1968]; *Patterson* v. *Dempsey,* 152 Conn. 431, 444, 207 A.2d 739 [1965]; *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 594, 37 A. 1080 [1897]." *State* v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99 (1976); see also *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 390, 512 A.2d 152 (1986); *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985). The defendant has cited no authority that compels us to conclude that he has sustained the heavy burden he has shouldered of demonstrating the unconstitutionality of the statutory provision in question.[6]

---

the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense."

[6] The defendant's reliance on *State* v. *Mitchell,* 200 Conn. 323, 337–38, 512 A.2d 140 (1986), is unpersuasive. *Mitchell* addresses the possible constitutional problem with the discovery provision of General Statutes § 54-46a (b) if that provision could be construed to interfere with the state's

The legislature enacted § 54-46a in the 1983 legislative session. See Public Acts 1983, No. 83-210, §§ 1, 5. The purpose of § 54-46a was to institute the procedures necessary to implement article first, § 8 of the Connecticut constitution, as amended by article seventeen of the amendments to the Connecticut constitution,[7] which had been certified by the secretary of the state as adopted by the voters during the prior year. See *State* v. *Sanabria,* 192 Conn. 671, 677–78, 474 A.2d 760 (1984). That amendment eliminated the grand jury indictment as the required means for holding a person for a crime punishable by death or life imprisonment and replaced it with a probable cause hearing. At the time of its adoption, however, the amendment did not embody the procedures necessary to facilitate its implementation but rather left the enactment of such procedures to the legislature. *State* v. *Rollinson,* 203 Conn. 641, 651, 526 A.2d 1283 (1987). The legislature responded by enacting § 54-46a. *State* v. *Sanabria,* supra, 693. Included in § 54-46a (b) is the provision that

continuing constitutional duty to disclose exculpatory information. See *Brady* v. *Maryland,* 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). There is no constitutional duty that requires a court to entertain motions to suppress at a probable cause hearing.

[7] Article seventeen of the amendments to the constitution of Connecticut provides: "Section 8 of the article first of the constitution is amended to read as follows: In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless upon probable cause *shown at a hearing in accordance with procedures prescribed by law,* except in the armed forces, or in the militia when in actual service in time of war or public danger." (Emphasis added.)

the defendant claims is unconstitutional and deprived him of due process of law, namely, that: "No motion to suppress or for discovery shall be allowed in connection with [a probable cause] hearing."

There is no federal constitutional requirement applicable to the states mandating a grand jury proceeding or probable cause hearing in order to place a person on trial in a state criminal proceeding. *Gosa* v. *Mayden,* 413 U.S. 665, 668 n.1, 93 S. Ct. 2926, 37 L. Ed. 2d 873 (1973); *Hurtado* v. *California,* 110 U.S. 516, 538, 4 S. Ct. 111, 28 L. Ed. 232 (1884); *Collins* v. *Swenson,* 443 F.2d 329, 331 (8th Cir. 1971); *State* v. *Gyuro,* 156 Conn. 391, 394, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274 (1968); *State* v. *Orsini,* 155 Conn. 367, 375–76, 232 A.2d 907 (1967); *Hervey* v. *People,* 178 Colo. 38, 44, 495 P.2d 204 (1972); *State* v. *Jefferson,* 79 Wash. 2d 345, 348, 485 P.2d 77 (1971); 1 F. Wharton, Criminal Procedure (13th Ed. Torcia) § 179. Connecticut was free therefore to create its own method and procedures to establish probable cause as a prerequisite to a trial for crimes punishable by death or life imprisonment. The constitutional amendment established the method, a probable cause hearing, and the legislature, pursuant to the constitutional mandate imposed upon it by the amendment, established the procedures for the conduct of the hearing through the enactment of § 54-46a. Once in place, those procedures became constituent parts of the substantive rights created by the constitutional amendment. *State* v. *Rollinson,* supra, 651; *State* v. *Sanabria,* supra, 690. Those substantive rights explicitly exclude a right to a hearing on a motion to suppress at the probable cause stage of a criminal proceeding in which the punishment may be death or life imprisonment. See General Statutes § 54-46a (b). The defendant, having been afforded a probable cause hearing under the constitution and § 54-46a, which provide his only entitle-

ment to such a hearing, can hardly be heard to complain of a lack of due process because the trial court refused to extend him a right to which he was not entitled under either.

Moreover, "a hearing in probable cause is necessarily more limited in scope than a full trial on the merits." *State* v. *Rollinson*, supra, 649. "A preliminary hearing is not designed to be a dress rehearsal for the trial." *Wilson* v. *State*, 655 P.2d 1246, 1251 (Wyo. 1982). "A substantial majority of the states, including many which require a general adherence to the rules of evidence, do not recognize exclusionary rule objections at the preliminary hearing." 2 W. LaFave & J. Israel, Criminal Procedure (1984) § 14.4, p. 266. Also, under the federal rules of criminal procedure, motions to suppress must be made to the trial court. See Fed. R. Crim. P. 5.1; 21 Am. Jur. 2d, Criminal Law § 428. Therefore, as long as the defendant was afforded the opportunity to challenge the admissibility of his statements at trial, the adjudicatory phase of the proceeding against him, his right to due process was preserved. See *Costello* v. *United States*, 350 U.S. 359, 364, 76 S. Ct. 406, 100 L. Ed. 397, reh. denied, 351 U.S. 904, 76 S. Ct. 692, 100 L. Ed. 1440 (1956); *In re Ralph M.*, 211 Conn. 289, 313, 559 A.2d 179 (1989); *Wilson* v. *State*, supra. The Supreme Court of Hawaii, in commenting on a rule of criminal procedure containing a provision analogous to the provision of § 54-46a in question, stated that "a damaging confession, which may later be suppressed at the trial level on the ground that it was involuntary and illegally obtained by the police, may be admitted at a preliminary hearing." *Gannett Pacific Corporation* v. *Richardson*, 59 Haw. 224, 232, 580 P.2d 49 (1978). We agree.

The defendant thereafter claims that even if he was not entitled to a motion to suppress at his probable cause hearing, the statements he gave to the police

should have been excluded from evidence at his trial because they were involuntary. The trial court determined that the defendant's statements were voluntary and admitted them into evidence.

The use of an involuntary statement of a defendant in a criminal trial violates a defendant's right to due process of law. *State* v. *Boscarino,* 204 Conn. 714, 740, 529 A.2d 1260 (1987); *State* v. *Smith,* 200 Conn. 465, 475, 512 A.2d 189 (1986). As a prerequisite to admissibility the state is required to prove, by a preponderance of the evidence, that under all the circumstances admissions by an accused were voluntarily made. *Lego* v. *Twomey,* 404 U.S. 477, 489, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972); *State* v. *Chung,* 202 Conn. 39, 53, 519 A.2d 1175 (1987); *State* v. *Stankowski,* 184 Conn. 121, 131, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Vollhardt,* 157 Conn. 25, 34, 244 A.2d 601 (1968). " 'The issue of whether [admissions are] voluntary and admissible is, in the first instance, one of fact for determination by the trial court in the exercise of its legal discretion.' *State* v. *Derrico,* 181 Conn. 151, 162, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); see *Jackson* v. *Denno,* 378 U.S. 368, 395, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Our usual deference to the trial court's finding on questions of this nature is qualified by the necessity for an independent examination of the entire record to determine whether the trial court's finding of voluntariness is supported by substantial evidence. *State* v. *Toste,* 198 Conn. 573, 576, 504 A.2d 1036 (1986); *State* v. *DeForge,* 194 Conn. 392, 398, 480 A.2d 547 (1984)." *State* v. *DeAngelis,* 200 Conn. 224, 232, 511 A.2d 310 (1986); *State* v. *Chung,* supra, 54.

We have made that independent examination and conclude that there is nothing in the record to support

the defendant's contention that his statements were not freely given. There is no evidence that, under all the circumstances, including the defendant's age and intellect, the police conduct in relation to him "was such as to overbear [his] will to resist and bring about [statements] not freely self-determined . . . ." *Rogers* v. *Richmond,* 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961); *State* v. *Boscarino,* supra, 740; *State* v. *Smith,* supra, 477; *State* v. *Shifflett,* 199 Conn. 718, 727, 508 A.2d 748 (1986). There is, on the other hand, substantial evidence that the police observed the defendant's rights scrupulously and treated him fairly. The trial court did not act improperly in admitting the defendant's statements into evidence.

All of the defendant's remaining claims complain either of discretionary rulings by the trial court or seek review by this court of trial court rulings that were not properly preserved for appellate review. We have examined the defendant's claims pertaining to the trial court's discretionary rulings and have concluded that the court did not abuse its discretion in ruling as it did on those questions requiring the exercise of its discretion. We have also scrutinized the defendant's claims that were not properly preserved for appellate review and to which the defendant ascribes constitutional implications. See *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). Our examination of those claims in juxtaposition to the entire record leads to the conclusion that, even if conceded, any alleged constitutional imperfections in the defendant's trial did not, singly or collectively, clearly deprive him of a fair trial. See *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989).

The judgment is affirmed.

In this opinion the other justices concurred.