## In re Daniel H.*

SUPERIOR COURT

Memorandum filed November 7, 1994

CLIFFORD, J. Daniel H., born March 1, 1979, was arrested pursuant to a warrant accusing him of a murder allegedly committed on June 26, 1994. He was presented in the Superior Court for Juvenile Matters at Montville and the state's advocate assigned to that court has moved for transfer of the matter to the regular criminal adult docket pursuant to General Statutes § 46b-127.

The state's attorney for the judicial district of New London has moved that this court determine whether he has standing to participate in the transfer hearing. The state's advocate, who claims to represent the interests of both the state and juvenile probation officer Reuben McCauley, the petitioner, has objected to the participation of the state's attorney. The respondent joins in this objection.

General Statutes § 46b-122 provides in pertinent part: "All matters pending in the juvenile court on

---

* Thus entitled in accordance with the spirit and intent of General Statutes § 46b-124 and Practice Book § 1060.1.

July 1, 1978, and all matters brought on or after July 1, 1978, which matters are juvenile matters, as defined in section 46b-121, shall continue to be kept separate and apart from all other business of the superior court as far as is practicable, except matters transferred under the provisions of sections 46b-126 and 46b-127, which matters shall be transferred to the regular criminal docket of said superior court."

Juvenile matters, under § 46b-121, include all proceedings concerning *delinquent* children within the state. A child is defined as "any person under sixteen years of age." General Statutes § 46b-120. A child may be found delinquent if the child (1) has violated any federal or state law or municipal or local ordinance, or (2) has violated any order of the Superior Court. General Statutes § 46b-120.

Consistent with the history of the Juvenile Court, juvenile matters and proceedings are not criminal prosecutions. *In re Tyvonne M.*, 211 Conn. 151, 158, 558 A.2d 661 (1989).

Under certain circumstances, after a hearing in the Superior Court for Juvenile Matters (Juvenile Court), a child over fourteen years of age may have his case handled as an adult criminal matter on the regular criminal docket of the Superior Court. Under § 46b-127 (1), the relevant section, the court must find that there is probable cause to believe that the child committed murder. The state's attorney argues that this unique crime and transfer hearing allow his participation both on statutory and constitutional grounds. He contends that recent language in reported cases and the amendment of § 46b-127 in 1990 reflect an acknowledgment that a transfer hearing in a murder case is the equivalent of a criminal proceeding, and thus he has standing to appear in Juvenile Court and to handle the hearing.

As a result of the decision in *In re Ralph M.*, 211 Conn. 289, 559 A.2d 179 (1989), the legislature amended § 46b-127 to incorporate the "procedures provided in section 54-46a," the adult criminal probable cause hearing, for use in Juvenile Court transfer hearings. Contrary to the opinion of the state's attorney, this court does not believe that the legislature intended that somehow this amendment would also now require the participation of his office in Juvenile Court transfer hearings. Clearly, the reason for the amendment was the result of some confusion and inconsistency across the state as to what evidentiary rules, if any, applied at a transfer hearing. Neither the case of *In re Ralph M.*, nor the subsequent change to § 46b-127 in response to that case, alters the participants involved or the location of the transfer hearing.

In *In re Michael B.*, 43 Conn. Sup. 38, 39, 638 A.2d 651 (1993), the trial court *permitted* the same state's attorney to participate in a transfer hearing in order to "promote the interests of justice" pursuant to what is now § 1023.1 (k) (3) of the Practice Book. This was apparently an issue of first impression in this state. The court did not decide the issue on statutory or constitutional grounds. That case appeared to rely on the proposition that a transfer hearing is part of a *criminal prosecution* based on the following from *In re Jose M.*, 30 Conn. App. 381, 392, 620 A.2d 804, cert. denied, 225 Conn. 921, 625 A.2d 821 (1993): "Indeed, the transfer proceeding is the first step in the *criminal prosecution* of a juvenile as an adult." (Emphasis added.) That statement by the Appellate Court followed that court's holding that the dying declaration exception to the hearsay rule applies not only in criminal trials, but also in transfer hearings since the rules of evidence apply pursuant to § 54-46a. Id.

This court does not agree that the transfer hearing is the first step *in* the *criminal prosecution* and there-

fore, somehow, that the state's attorney is involved. It is this court's opinion that the transfer hearing is *one* of the steps *before* a juvenile matter may be considered for criminal prosecution in the adult court. In the more recent case of *In re Prudencio O.*, 229 Conn. 691, 698, 643 A.2d 265 (1994), the Supreme Court stated: "We have characterized an appeal from a transfer order as a 'juvenile' rather than a 'criminal' matter for the purposes of assessing the relevant procedural rules on appeal. . . . Thus, under our statutory framework, the juvenile whose transfer has been ordered *stands poised at the doors of our criminal justice system, but not yet within them.*" (Citation omitted; emphasis added.)

This court also disagrees with the proposition that a mandatory transfer hearing makes murder a crime and thus required to be handled by the state's attorney's office. The Supreme Court stated in *In re Prudencio O.*, supra, 229 Conn. 701: "A delinquency petition does not charge a child with having committed a 'crime' and does not expose a child to punishment 'by death or life imprisonment.' Even though a 'serious juvenile offense' charges the commission of an act in violation of § 53a-54a, thus relating the offense to a violation of a criminal statute; General Statutes § 46b-120; adjudication of a juvenile offense is not a conviction; General Statutes § 46b-145; and does not permit the imposition of criminal sanctions. General Statutes § 46b-141. The child's status and exposure can only be altered by an order transferring his case to the regular criminal docket. General Statutes §§ 46b-126, 46b-127 and 46b-145. The fact that § 46b-127 is 'mandatory' after its specific prerequisites have been met . . . does not cut the statute loose from its moorings within the juvenile justice system."

The authority to present petitions in Juvenile Court lies with the state's advocates. Admittedly, their many

titles alone can lead to ambiguous conclusions as to their creation. There existed reference to the "court's legal advocate" in Practice Book § 1035.1 (1) prior to the amendment of the Practice Book rules in 1993. Effective October 1, 1993, a provision for "state's advocate" was added in Practice Book § 1023.1. There is also a reference in § 46b-133a to a "court advocate." Although not applicable to this proceeding, effective October 1, 1994, Public Acts 1994, No. 94-2 (July Special Session) provides for the "prosecuting authority for juvenile matters" to consult with the state's attorney concerning specific enumerated potential transfers from juvenile to adult court.[1] Thus, although they have been referred to by various titles, it is clear that they have historically handled juvenile matters. Their appointments are authorized by § 46b-123 as "other personnel . . . necessary for the treatment and handling of juvenile matters within the venue districts established under section 46b-142."

There exists no limit on the authority of the state's advocates to handle only those juvenile matters within their original and final jurisdiction. Juvenile Court is, in fact, the original and exclusive venue for a motion to transfer. This court holds that this is a "juvenile matter" and that the respondent is a "child" and thus the state's advocate is the proper authority to handle the proceeding. The state's attorney has authority over *criminal* matters—not juvenile. Until a transfer of a juvenile matter to the regular criminal docket of the Superior Court takes place, a fifteen year old charged with murder is still a child and the case is still a juvenile matter.

This court does recognize that the offices of the state's attorneys throughout the state become involved

[1] The legislature did not indicate that the state's attorney should or could participate in the transfer hearing—just that he or she be *consulted* by the advocate.

in serious investigations at a very early stage. Members of their staffs, including attorneys and investigators, may work on a case for months until an arrest is made. If the perpetrator of a murder happens to be under sixteen years of age, then an investigative file and/or reports would be turned over to the state's advocate's office for purposes of conducting the transfer hearing. While the state's attorney's office is often consulted, it does lose control over the case as it awaits with the hope and expectation that the matter will be transferred. There are many legal and practical issues that can occur in the handling of a serious case that can potentially end up as binding on the office of the state's attorney who ultimately will be responsible for the case if it is transferred from Juvenile Court. The two offices have historically cooperated with each other to the fullest extent and that is to be commended. This court, however, can certainly envision potential conflicts in their respective duties in the future, especially with the current broadening of potential transferable cases. This court recommends that there be some clarification by the appropriate forum to address and to clarify the respective duties and responsibilities of each office in such important matters.

Until a transfer of a juvenile matter to the regular criminal docket of the Superior Court takes place, a fifteen year old charged with murder is still a child and the case is still a juvenile matter. There exists no statutory or constitutional provision that extends the state's attorney's authority into the Juvenile Court system. This court also holds that although Practice Book § 1023.1 (k) (3) (effective October 1, 1994) allows a party to intervene if it would "promote the interests of justice," it is the state's advocate's statutory responsibility to present the case and the state's attorney does not have standing to appear formally and to participate in this juvenile transfer proceeding.